James M. Wicks
Steven N. Davi
FARRELL FRITZ, P.C.
1320 RXR Plaza
Uniondale, New York 11556

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
ATLAS SANITATION CO., INC. and MICHAEL MARCHINI,

                                  Plaintiffs,

                - against -

HOROWITZ LAW GROUP, LLC and STEVEN B. HOROWITZ,

                                  Defendants.
-----------------------------------------------------------------------x

Civil Action No.

**COMPLAINT AND**
**JURY DEMAND**

       Plaintiffs Atlas Sanitation Co., Inc. ("Atlas") and Michael Marchini ("Marchini") (collectively, "Plaintiffs"), by and through their attorneys, Farrell Fritz, P.C., as and for their Complaint, allege as follows:

## NATURE OF THE ACTION

       1.    This action arises out of the professional malpractice by defendants Horowitz Law Group, LLC ("HLG"), and Steven B. Horowitz ("Horowitz;" together with Horowitz, "Defendants") in connection with legal advice and services rendered to plaintiffs.

       2.    Plaintiffs retained HLG and Horowitz to represent and defend them in connection with the assessment of withdrawal liability against Atlas by the trustees ("Trustees") of the Pension Trust Fund ("Pension Fund") for Local 813, International Brotherhood of Teamsters ("Local 813") and the Severance and Retirement Fund ("Severance Fund;" together with the

Pension Fund, the "Funds") for Local 813 and Local 1034, International Brotherhood of Teamsters ("Local 1034"), pursuant to §§ 4201 through 4225 and 4301 of the Employee Retirement Income Security Act ("ERISA"), as amended.

3. Defendants failed to exercise the degree of due care incumbent upon attorneys practicing in New York and deviated from recognized and accepted professional standards for attorneys, thereby breaching their duties and causing damages to Plaintiffs.

4. Most critically, Defendants failed, among other things, to comprehend and advise Plaintiffs regarding (i) Plaintiffs' available defenses with regard to the Funds' assessment, determination and demand for payment of withdrawal liability against Atlas; (ii) the procedures for challenging the Funds' assessment and determination of withdrawal liability against Atlas; and (iii) the harsh consequences for failing to make interim payments and to timely initiate arbitration with regard to the Funds' assessment, determination, and demand for payment of withdrawal liability against Atlas.

5. Defendants knew or should have known that the advice to Plaintiffs not to make interim payments to the Funds following the Funds' assessment of withdrawal liability against Atlas would result in a default and acceleration of all withdrawal liability amounts assessed against Atlas by the Funds pursuant to Section 4219(c)(2) of ERISA.

6. Defendants also knew or should have known all of Plaintiffs' available defenses would be waived if Plaintiffs failed to timely initiate arbitration to challenge the Funds' assessment, determination and demand for payment of withdrawal liability against Atlas pursuant to Section 4221 of ERISA.

7. Defendants' failures in this regard have caused significant economic damage to Plaintiffs.

8. Because Defendants represented Plaintiffs at the time when Plaintiffs could have avoided a default and initiated arbitration, which would have preserved Plaintiffs' available defenses to the Funds' assessment, determination and demand for payment of withdrawal liability against Atlas, Plaintiffs have initiated this action against Defendants seeking monetary damages for malpractice.

## THE PARTIES

9. Plaintiff Atlas is a corporation organized and existing under the laws of New York, doing business in New York, and having its principal place of business at 156-19 107th Avenue, Jamaica, New York 11433.

10. Plaintiff Marchini is an individual who, at all times material hereto, has been domiciled and residing in the State of New York. At all times material hereto, Marchini was President and sole shareholder of Atlas.

11. Upon information and belief, at all times material hereto, Defendant HLG has been a for-profit limited liability company organized and existing under the laws of New Jersey, with its principal place of business at 101 Eisenhower Parkway, Roseland, New Jersey 07068.

12. Upon information and belief, at all times material hereto, Defendant HLG, has conducted business in New York and purposefully availed itself of the benefits of doing business in New York.

13. Upon information and belief, at all times material hereto, Defendant Horowitz is an individual who is domiciled and residing in the State of New Jersey.

14. Upon information and belief, Horowitz has been the sole member of HLG, and has been a duly licensed attorney in New Jersey at all times material hereto.

15. At all times material hereto, defendant Horowitz has conducted business in New York and purposefully availed himself of the benefits of doing business in New York.

## JURISDICTION AND VENUE

16. The Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1332, since the parties are citizens of different states and the amount in controversy exceeds $75,000.

17. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

18. Personal jurisdiction is proper over all Defendants pursuant to New York Civil Practice Law and Rules § 302(a) *et seq.* as Defendants' unlawful conduct created a substantial connection with this judicial district: Defendants have done business in New York, have purposefully availed themselves of the benefits of doing business in New York, and Plaintiffs' claims arise out of these contacts; Defendants' tortious acts were committed in New York; and Plaintiffs suffered injury in New York.

## FACTS COMMON TO ALL CAUSES OF ACTION

19. The Trustees are the trustees of jointly-administered, multi-employer, labor-management trust funds established and maintained pursuant to collective bargaining agreements in accordance with Sections 302(c)(5) and (c)(6) of the Taft-Hartley Act (29 U.S.C. § 186(c)(5). (c)(6)).

20. The Funds are employee benefit plans within the meaning of Sections 3(2), 3(3) and 503(d)(1) of ERISA, and multi-employer plans within the meaning of Sections 3(37) and 515 of ERISA.

21. The Trustees are fiduciaries within the meaning of Sections 3(21) and 502 of ERISA.

22. Atlas executed collective bargaining agreements with Teamsters Local 813 ("Atlas Agreements"), with respect to which the Pension Fund and Severance Fund were third-party beneficiaries, and thereby agreed to comply with and to be bound by all of the provisions of the Atlas Agreements and the Trust governing each Fund.

23. Boro-Wide Recycling Corp. ("Boro-Wide") also executed collective bargaining agreements with Teamsters Local 813 ("Boro-Wide Agreements"), with respect to which the Pension Fund and Severance Fund were third-party beneficiaries, and thereby agreed to comply with and to be bound by all of the provisions of the Boro-Wide Agreements and the Trust governing each Fund.

**Asset Purchase Agreement**

24. On or about, May 3, 2013, Boro-Wide, Atlas and Marchini executed an Asset Purchase Agreement ("APA"), pursuant to which Boro-Wide agreed to purchase substantially all of the assets of Atlas.

25. The APA provided for a purchase price of $1.8 million, to be allocated as follows:

  i) $900,000 to Atlas; and

  ii) $900,000 to Marchini, in consideration of his covenant not to compete with Boro-Wide, pursuant to a promissory note ("Note"), the terms of which provided for 120 equal monthly installments of $9,112, or a total of $1,093,440, inclusive of interest at the rate of four (4%) percent.

26. The APA states that Atlas and Boro-Wide "acknowledge and agree that [Atlas] has an affiliation and/or agreement with Teamsters Union Local 813 and that [Boro-Wide] does not intend nor will it enter into any type of agreement or contract with Teamsters Union Local 813 and [Atlas] shall be fully responsible for any and all assessments and/or withdrawal liability[1]

---

[1] Withdrawal liability is the employer's proportional share of the unfunded vested benefits as determined under a statutory formula when an employer exits or withdraws from a multiemployer pension fund.

5

which might emanate from this transaction and the sale of the assets, customer accounts and Goodwill as set forth herein."

27. Pursuant to Section 1.4[e] of the APA, Atlas was also responsible for any assessment or monetary liability imposed on Boro-Wide, arising from Atlas' activity and is attributable to Atlas' agreements, if any, with Teamsters Local 813.

28. Finally, pursuant to Sections 1.4[f], 2.12 and 2.16 of the APA, Atlas and Marchini were bound to jointly and severally indemnify Boro-Wide for any damage or loss sustained by Boro-Wide, including attorney's fees and other legal defense costs, by reason of the failure of Atlas to discharge any of its liabilities not expressly assumed by Boro-Wide.

29. Thus, by the express terms of the APA, any costs Boro-Wide incurred due to the assessment of withdrawal liability against Atlas would be attributed to Atlas' failure to discharge liabilities not expressly assumed by Boro-Wide.

30. Pursuant to Section 4.5 of the APA, Atlas and Marchini jointly and severally agreed to indemnify and hold Boro-Wide harmless from and against all indemnifiable damages of the purchaser, Boro-Wide.

31. Thus, by the express terms of the APA, any costs that Boro-Wide incurred due to the assessment of withdrawal liability against Atlas were indemnifiable damages.

32. As a result, Atlas was obligated to indemnify and hold Boro-Wide harmless from any and all liability arising out of the Pension Fund and Severance Fund's assessment of withdrawal liability against Atlas and/or Boro-Wide.

**Pension Fund Withdrawal Liability**

33. As of December 1, 2013, Atlas ceased to have an obligation to contribute to the Pension Fund, thereby completely withdrawing from the Pension Fund within the meaning of Section 4203(a) of ERISA.

34. As a result of its complete withdrawal from the Pension Fund, Atlas became liable to the Pension Fund for withdrawal liability.

35. The Trustees calculated Atlas was liable to the Pension Fund for withdrawal liability in the amount of $1,302,252.00.

36. By letter dated March 3, 2014 ("Pension Fund Demand Letter"), the Pension Fund notified Atlas of the estimated amount of its withdrawal liability and of the schedule for payment and demanded payment pursuant to the schedule, as required by ERISA Sections 4202 and 4219.

37. As explained in the Pension Fund Demand Letter, the payment schedule provided for a single payment of $1,302,252.00, or 240 monthly installment payments of $5,922.00.

38. In accordance with Section 4219(c)(2) of ERISA, the payments were to commence no later than 60 days after the date of the Pension Fund Demand Letter, *i.e.*, no later than May 3, 2014.

39. By letter dated March 20, 2014 ("Request for Review"), HLG on behalf of its client, Atlas, requested a review of the Fund's assessment of Atlas' withdrawal liability and schedule of payments set forth in the Pension Fund Demand Letter.

40. An employer that contests a fund's assessment of withdrawal liability by filing a request for review must make interim payments of the assessed amount pursuant to the fund's demand and payment schedule, even while in the review process.

7

41. Pursuant to Section 4219(c)(2) of ERISA, these interim payments must begin within sixty (60) days of the assessment.

42. On the advice of Defendants, as counsel, Atlas did not make any interim payments to the Funds.

43. By letter to HLG dated April 1, 2014 ("Response to Request for Review"), Proskauer Rose LLP, on behalf of its client, the Funds, responded to HLG's Request for Review.

44. Pursuant to Section 4221(a)(1)(A) of ERISA, Atlas had sixty (60) days from its receipt of the Funds' Response to Request for Review on April 1, 2014, or until May 31, 2014, to initiate arbitration regarding the Funds' determination of withdrawal liability.

45. On the advice of Defendants, as counsel, Atlas did not initiate arbitration.

46. By letter dated May 7, 2014 ("Pension Fund Default Letter"), the Pension Fund notified Atlas that it had failed to make any payments to the Pension Fund as required by the Demand Letter and that, if such failure was not cured within 60 days, or by July 6, 2014, Atlas would be deemed in default, within the meaning of Section 4219(c)(5) of ERISA.

47. The Pension Fund Default Letter also informed Atlas that its default would entitle the Pension Fund to acceleration and immediate payment of the outstanding amount of Atlas' withdrawal liability, plus accrued interest, liquidated damages, attorneys' fees and costs.

48. Despite the 60-day timeframe set forth in the Pension Fund Default Letter, Defendants, as counsel, advised Atlas they had more than 60 days to make payments to the Pension Fund. As a result, Atlas did not cure its default because it did not any make any payments to the Pension Fund as required by the Demand Letter.

8

49. Accordingly, by letter dated July 9, 2014 ("Pension Fund Acceleration Letter"), the Pension Fund notified Atlas that it was in default and demanded immediate payment of $1,302,252.00, plus accrued interest of $17,928.26.

**Severance Fund Withdrawal Liability**

50. As of December 1, 2013, Atlas ceased to have an obligation to contribute to the Severance Fund, thereby completely withdrawing from the Severance Fund within the meaning of Section 4203(a) of ERISA.

51. As a result of its complete withdrawal from the Severance Fund, Atlas became liable to the Severance Fund for withdrawal liability.

52. The Trustees calculated Atlas was liable to the Severance Fund for withdrawal liability in the amount of $192,690.00.

53. By letter dated March 3, 2014 ("Severance Fund Demand Letter"), the Severance Fund notified Atlas of the estimated amount of its withdrawal liability and of the schedule for payment and demanded payment in accordance with the schedule, as required by Sections 4202 and 4219 of ERISA.

54. The payment schedule in the Severance Fund Demand Letter provided for a single payment of $192,690.00, or 114 monthly installment payments of $2,219.91.00, plus a final payment of $1,508.00.

55. In accordance with Section 4219(c)(2) of ERISA, the payments were to commence no later than 60 days after the date of the Severance Fund Demand Letter, *i.e.*, no later than May 3, 2014.

56. In its Request for Review dated March 20, 2014, HLG, on behalf of its client Atlas, requested a review of the Fund's assessment of Atlas' withdrawal liability and schedule of payments set forth in the Severance Fund Demand Letter.

57. An employer that contests a fund's assessment of withdrawal liability by filing a request for review must make interim payments of the assessed amount pursuant to the fund's demand and payment schedule, even while in the review process.

58. Pursuant to Section 4219(c)(2) of ERISA, these interim payments must begin within sixty (60) days of the assessment.

59. On the advice of Defendants, as counsel, Atlas did not make any interim payments to the Funds.

60. In its "Response to Request for Review" dated April 1, 2014, Proskauer Rose LLP, on behalf of its client, the Funds, responded to HLG's Request for Review.

61. Pursuant to Section 4221(a)(1)(A) of ERISA, Atlas had sixty (60) days from its receipt of the Funds' Response to Request for Review on April 1, 2014, or until May 31, 2014, to initiate arbitration regarding the Funds' determination of withdrawal liability.

62. On the advice of Defendants, as counsel, Atlas did not initiate arbitration.

63. By letter dated May 7, 2014 ("Severance Fund Default Letter"), the Severance Fund notified Atlas that it had failed to make any payments to the Severance Fund as required by the Demand Letter and that, if such failure was not cured within 60 days, or by July 6, 2014, Atlas would be deemed in default, within the meaning of Section 4219(c)(5) of ERISA.

64. The Severance Fund Default Letter also informed Atlas that its default would entitle the Severance Fund to immediate payment of the outstanding amount of Atlas' withdrawal liability, plus accrued interest, liquidated damages, attorneys' fees and costs.

65. Despite the 60-day timeframe set forth in the Severance Fund Default Letter, Defendants, as counsel, advised Atlas they had more than 60 days to make payments to the Severance Fund. As a result, Atlas did not cure its default because it did not any make any payments to the Severance Fund as required by the Demand Letter.

66. By letter dated July 9, 2014 ("Severance Fund Acceleration Letter"), the Severance Fund notified Atlas that it was in default and demanded immediate payment of $192,690.00, plus accrued interest of $2,652.79.

**HLG/Horowitz Representation of Atlas/Marchini**

67. Prior to executing the APA, Atlas and Marchini understood if a contributing employer withdrew from either Fund, Atlas would be assessed withdrawal liability.

68. Accordingly, Atlas and Marchini understood that Atlas, as a contributing employer to the Funds, would be assessed withdrawal liability upon withdrawal from the Funds.

69. Thus, following the execution of the APA, Atlas and Marchini retained HLG and Horowitz on or about September 30, 2013, to represent and defend them in connection with any and all withdrawal liability triggered by the sale to Boro-Wide of substantially all of the assets of Atlas under the APA.

70. Indeed, Defendants had an attorney-client relationship with Plaintiffs from on or about September 30, 2013 to on or about October 15, 2014.

71. During the term of Defendants' representation of Plaintiffs, Defendants sent Plaintiffs invoices for their legal services, which Plaintiffs paid.

72. While an attorney-client relationship existed between Defendants and Plaintiffs, upon information and belief, Defendants never provided Plaintiffs with an engagement letter or written retainer agreement, in violation of 22 N.Y.C.R.R. § 1215.

11

73. Pursuant to 22 N.Y.C.R.R. § 1215, "an attorney who undertakes to represent a client and enters into an arrangement for, charges or collects any fee from a client shall provide to a client a written letter of engagement before commencing the representation .... [A]n attorney may [also] comply with ... this section by entering into a signed written retainer agreement with the client" (emphasis added).

74. As counsel for Plaintiffs, Defendants' legal responsibilities were not limited to discrete tasks.

75. Rather, Defendants were retained for the purpose of representing and defending them in connection with any and all withdrawal liability triggered by the sale to Boro-Wide of substantially all of the assets of Atlas under the APA.

76. During their representation of Plaintiffs, Defendants held themselves out as lawyers for Plaintiffs by, among other things, appearing on behalf of Plaintiffs with regard to any matters involving Local 813, Local 1034 and/or the Funds.

77. At all relevant times, Defendants purported to possess the skill and knowledge requisite for the practice of law and to adequately advise their clients on legal matters, and represented the same to Plaintiffs.

78. Upon information and belief, Defendants hold themselves out as having expertise in the area of labor law and employee benefits law, including but not limited to issues arising under ERISA and the Multiemployer Pension Plan Amendments Act of 1980 ("MPPA").

79. Plaintiffs relied on Defendants' representation about their skill, knowledge and ability to represent Plaintiffs.

80. Nonetheless, HLG and Horowitz failed to properly advise Atlas and Marchini, or advise them at all, regarding their rights and obligations under ERISA and the MPPA.

81. As a result, Atlas failed to make interim payments to the Funds within sixty (60) days of the Funds' assessment of withdrawal liability as Atlas was required to do pursuant to Section 4219(c)(2) of ERISA.

82. Atlas also failed to make any withdrawal liability payments to the Funds within sixty (60) days of receipt of the Pension Fund Demand Letter as Atlas was required to do pursuant to Section 4219(c)(2) of ERISA to avoid a default within the meaning of Section 4219(c)(5).

83. As a result, the Funds became entitled to immediate payment of the total amount of Atlas' withdrawal liability, plus accrued interest, pursuant to Section 4219(c)(5) of ERISA.

84. As a result of HLG and Horowitz's failure to properly advise Atlas and Marchini, or advise them at all, regarding their rights and obligations under ERISA and the MPPA, Atlas also failed to initiate arbitration within sixty (60) days from its receipt of the Funds' Response to Request for Review on April 1, 2014 as Atlas was required to do pursuant to Section 4221 of ERISA to preserve its available defenses to the Funds' assessment, determination and demand for payment of withdrawal liability against Atlas.

85. As a result, Atlas waived any and all available defenses, including, but not limited to, the limitations set forth in ERISA § 4225,[2] to challenge the Pension Fund's assessment, determination, and demand for payment of withdrawal liability against Atlas.

86. Accordingly, pursuant to Sections 502(g)(2), 4219(c)(6) and 4301(b) and (e) of ERISA, Atlas became liable to the Funds for withdrawal liability in the amount of

---

[2] ERISA § 4225 provides that in the case of a bona fide arms-length sale of all or substantially all of the employer's assets to an unrelated party for no more than $5,000,000, the withdrawal liability (*i.e.*, unfunded, vested benefits allocable to that employer) is capped at thirty (30%) percent of the dissolution or liquidation value of the business, that is, thirty (30%) percent of the sale price plus any retained assets.

$1,494,942.00, plus interest, liquidated damages, and reasonable attorneys' fees and costs incurred by the Funds.

87. Defendants represented Atlas at all relevant times set forth above.

88. Defendants terminated its relationship with HLG and Horowitz on or about October 15, 2014.

89. During the course of Defendants' representation of Plaintiffs, Plaintiffs paid to Defendants approximately $15,000 representing legal fees and disbursements related to the assessment, determination and demand for payment of withdrawal liability against Atlas.

**Federal Court Action**

90. On or about October 3, 2014, the Trustees commenced an action against Atlas and Boro-Wide in the United States District Court, Eastern District of New York, entitled *Trustees of the Local 813 Pension Trust Fund and Local 813 and Local 1034 Severance and Retirement Fund v. Atlas Sanitation, Inc., Boro-Wide Recycling Corp., ABC Corporations 1-10, and XYZ Corporations 1-10*, Case No. 1:14-cv-05467-PKC-VVP (the "Action"), seeking payment of more than $1.9 million representing the amount of withdrawal liability owed to the Funds, plus interest, liquidated damages, and reasonable attorneys' fees and costs incurred by the Funds.

91. On or about October 21, 2014, Farrell Fritz, P.C. ("FF"), was retained to represent and defend Atlas in the Action.

92. On or about February 19, 2015, Boro-Wide asserted cross-claims against Atlas and Marchini, and commenced a third-party action against Marchini, for contractual and common law indemnification, seeking to obligate Atlas and Marchini to indemnify and hold harmless Boro-Wide from any and all liability arising out of the Pension Fund and Severance Fund's assessment of withdrawal liability.

14

93. FF represented Marchini and Atlas in connection with Boro-Wide's cross-claims and third-party action.

94. The Action was discontinued on or about October 27, 2015, pursuant to the terms of two confidential settlement agreements and general releases among Atlas, Marchini, Boro-Wide, and the Funds.

95. During the course of FF's representation of Plaintiffs in the Action, Atlas and Marchini paid to FF approximately $145,000, representing legal fees and disbursements.

## CLAIM FOR RELIEF
### (Attorney Malpractice)

96. Plaintiffs repeat and reallege each and every preceding allegations as if fully set forth herein.

97. Defendants and Plaintiffs had an attorney-client relationship from on or about September 30, 2013 to on or about October 15, 2014.

98. During that time, Defendants undertook to represent Plaintiffs as their counsel and agreed to provide Plaintiffs with complete and accurate advice on relevant legal matters in a proper, skillful and diligent manner, in exchange for payment.

99. Defendants, as attorneys to Plaintiffs, owed Plaintiffs a duty of care in advising and counseling Plaintiffs on all matters related to and arising out of the engagement.

100. Defendants' self-described expertise in the area of labor law, ERISA and the MPPA is precisely the reason why Plaintiffs retained Defendants from in or around September, 2013 to October, 2014, and paid them approximately $15,000 for legal services.

101. Upon information and belief, Horowitz, as senior partner of HLG, limits his practice to labor and employment matters and purports to have an expertise in employment law including ERISA.

15

102. In accordance with their agreement with Plaintiffs, Defendants provided legal counsel with respect to all issues relating to the assessment, determination, and demand for payment of withdrawal liability by the Funds against Atlas and Marchini.

103. Defendants' legal representation included advising Plaintiffs regarding their rights and obligations under ERISA and the MPPA, including but not limited to, the need to make interim payments to the Funds to avoid default and to timely demand arbitration to preserve any and all available defenses to the assessment, determination and demand for payment of withdrawal liability by the Funds against Atlas and Marchini.

104. Defendants were negligent in failing to advise Plaintiffs of their rights and obligations under ERISA and the MPPA in connection with the assessment, determination and demand for payment of withdrawal liability.

105. Defendants failed to properly protect Plaintiffs' legal rights in accordance with applicable laws, statutes and rules, and the duties and obligations of legal counsel to its clients, which were paying them substantial sums for quality legal advice.

106. Defendants' legal representation was negligent, inaccurate, incomplete and inadequate, and did not comport with the standard of care expected of lawyers in their field of expertise.

107. Indeed, a lawyer exercising ordinary prudence would have advised Plaintiffs, at minimum, (i) to make interim payments to the Funds to avoid default and accelerated payment of the outstanding amount of Atlas' withdrawal liability, plus accrued interest, liquidated damages, attorneys' fees and costs, and (ii) to timely initiate arbitration to avoid waiver of any and all available defenses to the assessment, determination and demand for payment of withdrawal

liability by the Funds against Atlas and Marchini, including, but not limited to, the limitations set forth in ERISA § 4225.

108. Yet, such advice and counsel was never given.

109. Defendants' failures were a departure from the standard of care possessed by members of the legal community practicing in that area.

110. As a direct result of the foregoing acts and omissions, Plaintiffs have been damaged and have suffered and will continue to suffer money damages.

111. By reason of the foregoing, Plaintiffs are entitled to compensatory damages and punitive damages in an amount to be determined at trial, but not less than $500,000.

**WHEREFORE**, Plaintiffs respectfully demand judgment against HLG and Horowitz jointly for actual damages in an amount to be determined at trial, but not less than $500,000, together with costs, disbursements, attorneys' fees, such other and further relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues that may be so tried.

Dated: January 18, 2017

                                                                                    FARRELL FRITZ, P.C.

By: /S/ *James M. Wicks*
        James M. Wicks
        Steven N. Davi
    *Attorneys for Plaintiffs*
    1320 RXR Plaza
    Uniondale, New York 11556
    (516) 227-0700