```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
ATLAS SANITATION CO., INC. and            :
MICHAEL MARCHINI,                         :
                                          :
                    Plaintiffs,           :         **MEMORANDUM AND ORDER**
                                          :
         -against-                        :         17-CV-283 (DLI) (RLM)
                                          :
HOROWITZ LAW GROUP, LLC AND               :
STEVEN B. HOROWITZ,                       :
                                          :
                    Defendants.           :
----------------------------------------------------------- x
```

**DORA L. IRIZARRY**, Chief United States District Judge:

Plaintiff Atlas Sanitation Co. Inc. ("Atlas") is a New York corporation and Plaintiff Michael Marchini ("Marchini"; together with Atlas, "Plaintiffs") is the President and sole shareholder of Atlas. (Plaintiffs' Amended Complaint, hereinafter "Am. Compl.," Dkt. Entry No. 13, ¶¶ 9, 10.) Defendant Steven B. Horowitz ("Horowitz") is an attorney domiciled and licensed in New Jersey who has conducted business in New York, and is the sole member of Defendant Horowitz Law Group, LLC ("HLG"; together with Horowitz, "Defendants"), a limited liability company under the laws of New Jersey. Plaintiffs filed a legal malpractice action against Defendants requesting compensatory and punitive damages in the amount of no less than $500,000. (*See generally* Am. Compl., Dkt. Entry No. 13.)

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendants moved to dismiss the Amended Complaint for failure to state a claim for relief. (*See* Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mot."), Dkt. Entry No. 17.) Plaintiffs opposed the motion, (*See* Pl.'s Mem. in Opp'n to Mot. to Dismiss ("Pl.'s Opp'n."), Dkt. Entry No. 18.), and Defendants replied. (*See* Defs.' Reply Mem. In Supp. Of Mot. To Dismiss ("Defs.' Reply"), Dkt. Entry No. 19.)

**Background**

Asset Purchase Agreement

Atlas is a privately owned sanitation company. Boro-Wide, also a privately owned sanitation company, bought Atlas's assets on May 3, 2013, for $1.8 million pursuant to an Asset Purchase Agreement ("APA"). (Am. Compl. ¶¶ 24, 25.) Atlas and Boro-Wide had separate collective bargaining agreements with Teamsters Local 813 regarding the Pension Trust Fund ("Pension Fund") and the Severance and Retirement Fund ("Severance Fund"; together with the Pension Fund, the "Funds"), where the Funds were third party beneficiaries to each agreement. Atlas and Boro-Wide "acknowledge[d] and agree[d] that [Atlas] ha[d] an affiliation and/or agreement with Teamsters Union Local 813 and that [Boro-Wide] d[id] not intend [and would not] enter into any type of agreement or contract with Teamsters Union Local 813[, making Atlas] fully responsible for any and all assessment and/or withdrawal liability emanat[ing] from [the] transaction or sale of the assets, customer accounts[,] and Goodwill." (*Id.* at ¶ 26.) Thus, all costs incurred by Boro-Wide were attributable to Atlas. (*Id.* at ¶¶ 27-29, 31.)

Pension and Severance Fund Withdrawal Liability

On December 1, 2013, Atlas withdrew from the Funds within the meaning of § 4203(a) of ERISA, and had no further obligation to contribute to each fund. (Am. Compl. ¶¶ 33, 50.) Atlas incurred $1,494,942.00 in withdrawal liability (*Id.* at ¶¶ 34-35, 51-52). It owed $1,302,252.00 to the Pension Fund and $192,690.00 to the Severance Fund. (*Id.*) On March 3, 2014, Plaintiffs received a letter from the Pension Fund ("Pension Fund Demand Letter"), identifying the estimated assessment of withdrawal liability and including payment options. (*Id.* at ¶¶ 36, 53.) The Pension Fund Demand Letter stated that Plaintiffs could pay one lump sum of $1,302,252.00 or 240 monthly installments of $5,922.00. (*Id.* at ¶ 37.) Also on March 3, 2014, Plaintiffs received a letter

2

from the Severance Fund ("Severance Fund Demand Letter"). The Severance Fund Demand Letter stated that Plaintiffs could pay one lump sum payment of $192,690.00 or 114 monthly installments of $2,219.91, with a final payment of $1,508.00. (*Id.* at ¶ 54.) Pursuant to § 4219(c)(2) of ERISA, Plaintiffs had 60 days to commence payment after the date of the letters or no later than May 3, 2014. (*Id.* at ¶¶ 38, 55.)

Plaintiffs sought legal representation to resolve the withdrawal liability matter that resulted from selling their assets to Boro-Wide, pursuant to §§ 4201 through 4225, and § 4301 of ERISA. (Am. Compl. ¶¶ 2, 69, 75.) Plaintiffs retained Defendants on September 30, 2013 because of their "self-described" expertise in labor law, ERISA, and the Multiemployer Pension Plan Amendments Act of 1980 ("MPPA"). (*Id.* at ¶¶ 69, 70, 78, 99, 102.) Plaintiffs relied on Defendants' purported skill, knowledge, and ability to represent them. (*Id.* at ¶ 79.) Even though Defendants failed to provide Plaintiffs with a written retainer agreement, Defendants held themselves out as Plaintiffs' attorneys, appearing on their behalves in matters involving Locals 813 and 1034, and the Severance and Pension Funds (*Id.* at ¶ 72, 76.) Defendants advised Plaintiffs and sent invoices to Plaintiffs for legal services. (*Id.* at ¶ 71.) Plaintiffs paid about $15,000 to Defendants in legal fees related to their withdrawal liability matters. (*Id.* at ¶¶ 89, 102.)

Plaintiffs allege that, "[o]n the advice of Defendants, as [their] counsel, Atlas did not make any interim payments to the Funds." (Am. Compl. ¶ 42.) Employers may contest a fund's assessment of withdrawal liability by filing a request for review. (*Id.* at ¶¶ 40, 57.) On March 20, 2014, on behalf of Plaintiffs, Defendants submitted a "Request for Review" letter to the Funds to contest the Funds' assessment and schedule of payments against Plaintiffs set forth in the March 3, 2014 letters. (*Id.* at ¶¶ 39, 56.) On April 1, 2014, the Funds' attorneys, Proskauer Rose LLP,

responded to Defendants' Request for Review.[1] (*Id.* at ¶¶ 43, 60.) Plaintiffs allege that Defendants advised Plaintiffs not to make interim payments despite ERISA's § 4219(c)(2) requirement that payments be made within 60 days of the assessment, notwithstanding a request for review. (*Id.* at ¶ 59.)

On May 7, 2014, the Funds issued two letters to Plaintiffs stating that Atlas would be in default if they did not make payments within 60 days, or by July 6, 2014. (Am. Compl. ¶¶ 46-47, 63-64.) The letters explained that a default would subject Plaintiffs' withdrawal liability to acceleration and immediate payment, in addition to accrued interest, liquidated damages, and attorneys' fees. (*Id.*) Defendants advised Plaintiffs that Atlas had more than 60 days to make payments to the Funds despite the letters' warning. (*Id.* at ¶¶ 48, 65.) Plaintiffs heeded Defendants' advice and did not cure their default. (*Id.*)

The Funds sent two final letters on July 9, 2014 notifying Plaintiffs of their default and demanding immediate payment with accrued interest. (*Id.* at ¶¶ 49, 66.) Plaintiffs owed the Pension Fund $1,320,180.26, including the original assessment of $1,302,252.00 and $17,928.26 in accrued interest. (*Id.* at ¶ 49.) Plaintiffs owed the Severance Fund $195,342.79, including the original assessment of $192,690.00 and $2,652.79 in accrued interest. (*Id.* at ¶ 66.)

Moreover, Plaintiffs had 60 days, after the Funds' response, to arbitrate against the Funds' determination of Atlas's withdrawal liability pursuant to § 4221(a)(1)(A) of ERISA. (Am. Compl. at ¶ 61.) Plaintiffs allege that Defendants "fail[ed] to properly advise Atlas and Marchini, or advise them at all, regarding their rights and obligations under ERISA and the MPPA," and, as a result, "Atlas also failed to initiate arbitration within sixty (60) days from its receipt of the Funds' Response to Request for Review on April 1, 2014" pursuant to § 4221(a)(1)(A) of ERISA, "to

---

[1] The pleadings are silent as to the contents of this response.

preserve its available defenses to the Funds' assessment, determination, and demand for payment of withdrawal liability against Atlas." (*Id.* at ¶ 84-85.) Plaintiffs further allege that, "[o]n the advice of Defendants, as counsel, Atlas did not initiate arbitration." (*Id.* at ¶ 45, 62.)

Legal Action against Plaintiffs

On October 3, 2014, the Funds sued Atlas and Boro-Wide in this Court, seeking approximately $1.9 million in damages plus interest, liquidated damages, and reasonable attorneys' fees. (Am. Compl. ¶ 90.) (*See Trustees of the Local 813 Pension Trust Fund and Local 813 and Local 1034 Severance and Retirement Fund v. Atlas Sanitation, Inc., Boro-Wide Recycling Corp., ABC Corporations 1-10, and XYZ Corporations 1-10*, No. 1:14-cv-05467 (PKC) (VVP)). Plaintiffs terminated Defendants' representation on October 15, 2014, and retained Farrell Fritz, P.C. (counsel herein) on October 21, 2014. (*Id.* at ¶¶ 70, 91, 99, 102.)

Boro-Wide asserted cross-claims against Plaintiffs on February 19, 2015, and filed a third party action against Marchini for contractual and common law indemnification. (Am. Compl. ¶ 92.) The parties discontinued the actions on October 27, 2015 with two confidential settlement agreements. (*Id.* at ¶ 94.) Plaintiffs' current counsel represented them in both actions, and Plaintiffs spent approximately $145,000 in legal fees. (*Id*. at ¶¶ 91, 93, 97.)

Plaintiffs commenced this action for legal malpractice against Defendants on January 18, 2017. Plaintiffs assert that Defendants had a duty, as Plaintiffs attorneys, to advise Plaintiffs properly on their rights and obligations under ERISA and the MPPA, and that Defendants knew or should have known that Plaintiffs' failure to make interim payments would result in a default and acceleration in their withdrawal liability, and that a failure to arbitrate waived all of Plaintiffs' available defenses against the Funds. (Am. Compl. ¶¶ 5, 6, 105.) Plaintiffs request compensatory

and punitive damages of at least $500,000 plus costs, disbursements, and attorneys' fees, as well as any other relief that this Court deems appropriate. (*Id.* at ¶¶ 7, 8, 114.)

## Discussion

### I. Motion to Dismiss Standard

A legal malpractice claim "presents a question of law which can be decided on a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP,* 464 F.3d 328, 337 (2d Cir. 2006) (citing *Rosner v. Paley,* 65 N.Y.2d 736,738 (1985)). Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Pleadings are to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)), overruled in part on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Under Rule 12(b)(6), a defendant may move, in lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can be granted." To resolve such a motion, courts "must accept as true all [factual] allegations contained in a complaint," but need not accept "legal conclusions." *Iqbal*, 556 U.S. at 678. For this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to insulate a claim against dismissal. *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

6

**II. Legal Malpractice Claim**

Choice of Law

Neither party has raised choice of law. Instead, each party cites New York law throughout its papers. However, because Plaintiffs allege that Defendant HLG is a company organized and existing under the laws of New Jersey, with its principal place of business in Roseland, New Jersey, and Defendant Horowitz is licensed to practice law in New Jersey (and not also in New York), New York law cannot be assumed.

This action comes before this Court under diversity jurisdiction; as such, this Court applies the choice of law rules of New York, the forum in which it sits. *Schwartz v. Liberty Mut. Ins. Co.,* 539 F.3d 135, 147 (2d Cir.2008). Under New York choice of law rules, where the parties agree that New York law controls, explicitly or impliedly, this is sufficient to establish choice of law. *Fed. Ins. Co. v. Am. Home Assur. Co.,* 639 F.3d 557, 566 (2d Cir. 2011) (citing *Krumme v. WestPoint Stevens Inc.,* 238 F.3d 133, 138 (2d Cir. 2000)). A reading of the papers, which cite only New York law, indicates that the parties impliedly chose New York law to govern their case; thus, the Court will apply New York legal malpractice law to its analysis.

New York Legal Malpractice

Under New York law, the three elements of a legal malpractice claim are: (1) duty, (2) breach of the duty, and (3) proof that the actual damages were proximately caused by the breach of the duty. *Ocean Ships, Inc. v. Stiles,* 315 F.3d 111, 117 (2d Cir. 2002) (quoting *Tinelli v. Redl*, 199 F.3d 603, 606 (2d Cir. 1999)). Defendants do not move to dismiss on the first two elements, disputing only Plaintiffs' allegations of proximate cause and actual damages.

Proximate Cause

The point of dispute in this action lies within the third element of a legal malpractice claim. The third element requires plaintiff to show "but for" causation: but for the attorney's negligence, what would have been a favorable outcome was an unfavorable outcome. *Rubens v. Mason,* 387 F.3d 183, 189 (2d Cir. 2004).

In *Gurvey v. Cowan, Liebowitz & Latman, P.C.,* plaintiff appealed the district court's dismissal of its claim for legal malpractice. 462 Fed.Appx. 26 (2d Cir. 2012). The district court concluded that plaintiff had offered only "vague and non-actionable challenges" to defendants' legal representation. *Id.* at 29. The court held that plaintiff's allegations were not premised on "anything more than speculation" and did not present a challenge to the actual quality of defendants' legal representation. *Id.* The district court held that plaintiff's allegation of a conflict of interest lacked detail as to the supposed conflict, and determined that plaintiff failed to identify the precise damages she suffered or how defendants' legal representation had actually caused these damages. *Id.* The Second Circuit vacated the district court's judgment and remanded the case, concluding that plaintiff "stated a plausible claim by alleging that the defendants used the information given to them as part of a confidential attorney-client relationship to their own advantage by disclosing it to other clients who then profited therefrom to plaintiff's detriment." *Id.* at 30.

Here, Plaintiffs sufficiently plead proximate cause by stating a plausible claim that, but for Defendants' negligent legal advice, Plaintiffs would not have incurred additional legal fees and increased withdrawal liability. Plaintiffs allege in great detail that Defendants "were negligent in failing to advise (or properly advise)" Plaintiffs, and attribute Defendants' negligence to their damages. Plaintiffs specifically allege that, "on the advice of Defendants, as counsel, Atlas did not

8

make interim payments to the Funds." (Am. Compl. ¶¶ 42, 59; Pl.'s Opp'n. at 5.) Plaintiffs allege that "Defendants, as [their] counsel, advised Atlas that they had more than 60 days to make payments to the Funds." (Am. Compl. ¶¶ 48. 65; Pl.'s Opp'n. at 9.) Plaintiffs assert that, as a result of Defendants' negligence in failing to advise (or properly advise) Plaintiffs, "the full amount of the withdrawal liability, plus accrued interest, liquidated damages, attorney's fees and costs was accelerated and became immediately due." (*Id.* at 10.) Plaintiffs further assert in their pleadings that, "as a direct and proximate result of Defendants' failure to advise (or properly advise) Plaintiffs, they were "stripped of any and all defenses, including the insolvency cap of ERISA § 4225, which would have slashed Atlas' withdrawal liability precipitously." (*Id.*) These allegations sufficiently plead proximate cause.

<u>Damages</u>

In their motion, Defendants assert that "plaintiffs have not alleged any details about the ultimate resolution of their withdrawal liability," making it "impossible to discern (beyond pure speculation) any potential damage purportedly incurred by plaintiffs." (Defs.' Mot. at 6.) To survive a motion to dismiss of a legal malpractice claim, Plaintiffs need not show that they actually sustained damages, but must allege facts from which damages attributable to Defendants' conduct might be reasonably inferred. *Gottlieb, Rackman & Reisman, P.C. v. ZenColor Corp.,* 2015 WL 4206982 at *4 (S.D.N.Y. July 10, 2015). Damages for legal malpractice may include fees incurred as a consequence of defendant's malpractice. *See Baker v. Dorfman,* 239 F.3d 415, 426 (2d Cir. 2000).

Plaintiffs allege damages incurred from attorneys' fees expended on both new counsel and Defendants, a total of $160,000. Plaintiffs further claim that Defendants' negligence caused Plaintiffs to default and pay, through two confidential settlements, approximately 70% more to

resolve the matter for which Plaintiffs retained Defendants. (Am. Compl. ¶¶ 95, 112.) Thus, Plaintiffs sufficiently plead damages.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss is denied.

SO ORDERED.

Dated: Brooklyn, New York
      March 29, 2018

/s/
DORA L. IRIZARRY
Chief Judge